**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BRUNSWICK PANINI'S, LLC, et al.,** | ) | **CASE NO. 1:20CV1895** |
| | ) | |
| **Plaintiffs,** | ) | **SENIOR JUDGE** |
| | ) | **CHRISTOPHER A. BOYKO** |
| **vs.** | ) | |
| | ) | <u>**OPINION AND ORDER**</u> |
| **ZURICH AMERICAN INSURANCE** | ) | |
| **COMPANY,** | ) | |
| **Defendant.** | ) | |

<u>**CHRISTOPHER A. BOYKO, SR. J**</u>.:

This matter comes before the Court upon the Motion (ECF DKT #14) of Defendant

Zurich American Insurance Company to Dismiss Plaintiffs' Complaint pursuant to

Fed.R.Civ.P. 12(b)(6).  For the following reasons, the Motion is granted.  Defendant's

Request (ECF DKT #15) for Incorporation by Reference and for Judicial Notice in Support of

Motion to Dismiss is granted as unopposed.

## I. FACTUAL BACKGROUND

Plaintiffs Brunswick Panini's and Kent Entertainment Group originally filed this

Complaint in Cuyahoga County Common Pleas Court and amended their Complaint on July

22, 2020.  The case was removed to federal court on August 25, 2020, on the basis of diversity and CAFA jurisdiction.

Defendant Zurich American Insurance Company issued Property Portfolio Protection Policy No. CPO 1051670-05 to Plaintiffs for the coverage period from May 10, 2019 to May 10, 2020.  Plaintiffs operate full-service restaurant/bar facilities in Kent and Brunswick, Ohio.  They made a claim under the policy for Business Income Loss and Extra Expense and Civil Authority Coverage due to the COVID-19 coronavirus pandemic, which Defendant denied.

Plaintiffs' Amended Complaint alleges claims for Declaratory Relief, Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing on behalf of themselves and all individuals and entities throughout the United States who, from January 1, 2020 to the present, have been insured by Commercial and/or Business Owner Policies issued by Defendant and were denied Business Income Loss, Extra Expense and/or Civil Authority Coverage due to COVID-19.

Plaintiffs allege that on March 15, 2020, the Ohio Department of Health (ODH) restricted food and beverage sales in the state to carry-out and delivery only, with no onsite consumption permitted because of the COVID-19 pandemic.  The stated goal of this order was to slow the pandemic by minimizing in-person interaction "in an environment with a multitude of hard surfaces."  Effective March 23, 2020, all Ohio residents were ordered to stay at home and all non-essential businesses in Ohio were required to cease all activities. (Stay-at-Home Order).

After Plaintiffs halted operations and shut their businesses by order of the State of Ohio, they made claims under their Property Portfolio Protection Policy with Defendant.

In their Amended Complaint (ECF DKT 1-3), Plaintiffs allege:

9. Under the Policies, Plaintiffs agreed to make premium payments to Defendant in exchange for Defendant's promise to indemnify Plaintiffs for losses including, but not limited to, business income loss at their commercial property location ("Property").

10. The Policies are currently in full effect, providing property, business personal property, business income and extra expense, and additional coverages for the effective period, which includes January 1, 2020 to the present.

11. Plaintiffs faithfully paid policy premiums to Defendant, specifically to provide additional coverage for "Business Income and Extra Expense Coverage" in the event of business closures by order of Civil Authority.

12. Under the Policies, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Property is specifically prohibited by order of Civil Authority as the direct result of a covered loss to property in the immediate area of Plaintiffs' Property.  The covered physical loss includes, without limitation, loss of use.

13. COVID-19's actual or suspected physical presence at or in the vicinity of Plaintiffs' Property prevent [sic] Plaintiffs from making full use of the Property, especially in cases where the business must close in part or in full. Under the terms and condition of the Policy, this kind of loss constitutes a physical loss to the Property in that there has been a loss of use of the Property. Moreover, the COVID-19 virus is a "physical" thing, not an abstract fear.  For example, restaurants, such as Plaintiffs, forced to close due to COVID-19 in or near the restaurants have suffered a "physical loss" of use of their Property, with resulting business interruption loss.

14. Under the terms and conditions of the subject Policies, physical loss does not mean and/or require tangible "physical damage."

15. The Policies are "all-risk" policies, in so far as they provide that a covered cause of loss under the policy means direct physical loss of or damage to the property unless the loss is specifically excluded or limited in the Policies. Here, no specific exclusion applies to reasonably justify the denial of Plaintiffs' claims.

* * *

30. Based on the prevalence of the virus in northeast Ohio, it is probable that

Plaintiffs sustained direct physical loss of or damage due to the presence of coronavirus, and has unquestionably sustained direct physical loss as the result of the pandemic and/or civil authority orders issued by the Governor of Ohio.

**Relevant Policy Provisions**

**Coverage**

According to the Zurich insuring agreement:  We will pay for **direct physical loss of or damage to** "real property" and "personal property" at a "premises" directly caused by a "covered cause of loss."

"Covered cause of loss" means "fortuitous cause or event, not otherwise excluded."

**Business Income** - We will pay for the actual loss of "business income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by **direct physical loss of or damage to** property at a "premises" at which a Limit of Insurance is shown on the Declarations for Business Income. The loss or damage must be directly caused by a "covered cause of loss."  We will not pay more than the applicable Limit of Insurance shown on the Declarations for Business Income at that "premises."

We will pay for the actual loss of "business income" you sustain due to the:

(a). Necessary "suspension" of your "operations" from **direct physical loss of or damage to** Covered Property caused by "microorganisms" when the "microorganisms" are the result of a "covered cause of loss;" or (b). Prolonged "period of restoration" due to the remediation of "microorganisms" from a covered loss.

"Operations" means your business activities occurring at the covered location prior to the physical loss or damage. . .

-4-

"Period of restoration" means the period of time that begins when . . . the direct physical loss or damage that causes "suspension" of your "operations" occurs. . . If you do not resume "operations", or do not resume "operations" with reasonable speed (whether at your "premises" or "reported unscheduled premises" or elsewhere), the "period of restoration" will end on the date . . .which would have been necessary to make the location physically capable of resuming the level of "operations" which existed prior to the loss or damage after the completion of repairs, replacement, or rebuilding.  (Emphasis added).

**Civil Authority** - We will pay for the actual loss of "business income" you sustain for up to the number of days shown on the Declarations for Civil Authority resulting from the necessary "suspension," or delay in the start, of your "operations" if the "suspension" or delay is caused by order of civil authority that **prohibits access** to the "premises" or "reported unscheduled premises'"  That order **must result from a civil authority's response to direct physical loss of or damage to property** located within one mile from the "premises" or "reported unscheduled premises" which sustains a "business income" loss.  The loss or damage must be directly caused by a "covered cause of loss."

"**Extra expense**" means operating expenses you incur during the "period of restoration" that would not have been necessary to incur if there had been no **direct physical loss or damage to** the property, provided such expenses are incurred:

a. In an attempt to avoid a "suspension" of or to continue those "operations" which have been affected by **the direct physical loss or damage to the property**; or

b. In an attempt to minimize the "period of restoration."

**Exclusions**

**Loss of Market or Delay** - We will not pay for loss or damage caused by or resulting from loss of market, **loss of use**, or delay.  This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a "mistake" or "malfunction."

**Microorganisms** - We will not pay for loss or damage consisting of, **directly or indirectly caused by**, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of "microorganisms," unless resulting from fire or lightning.  Such loss or damage is excluded **regardless of any other cause or event**, including a "mistake," "malfunction" or weather condition, that **contributes concurrently or in any sequence to the loss**, even if such other cause or event would otherwise be covered.

We will also not pay for loss, cost, or expense arising out of any request, demand, **order**, or statutory or regulatory requirement **that requires any insured** or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or **in any way respond to, or assess the effects of "microorganisms."**

"**Microorganism**" means any type or form of organism of microscopic or ultramicroscopic size including, but not limited to, "fungus", wet or dry rot, **virus**, algae, or bacteria, or any by-product.

The Policy does not include a definition of the phrase **"**direct physical loss of or damage to**"** as that phrase is used in the Property Coverage Form insuring agreement, and in the Business Income, Extra Expense and Civil Authority provisions of the Property Coverage Form.

Per the Policy, words or phrases that are not defined are intended to have their ordinary or common meaning.  Disputes concerning the meaning of words or phrases will be

-6-

resolved using the most recently published version of <u>Webster's Unabridged Dictionary</u>.

**<u>Defendant's Motion to Dismiss</u>**

Defendant filed its Motion to Dismiss (ECF DKT #14) on September 30, 2020. Defendant argues that Plaintiffs have failed to plausibly allege "direct physical loss of or damage to property," which is a precondition for coverage.  Defendant contends that the Microorganism Exclusion forecloses coverage under the Business Income, Extra Expense and Civil Authority provisions.  Moreover, Civil Authority coverage is limited to losses resulting from orders issued "in response to" direct physical loss of or damage to property within one mile of Plaintiffs' insured premises and from orders that "prohibit access" to the insured premises.

Aside from the contractual arguments, Defendant asserts that the Declaratory Judgment claim should be dismissed because it is a remedy not a standalone cause of action; and it is duplicative of the Breach of Contract claim.  Further, the Bad Faith claim should be dismissed because Zurich's denial of coverage was correct or, at a minimum, reasonable and not arbitrary or capricious.  Defendant asks the Court to dismiss the Amended Complaint with prejudice because Plaintiffs have already amended once and are unlikely to ever state a plausible claim for relief.

**<u>Plaintiffs' Opposition</u>**

Plaintiffs respond that whether COVID-19 causes "direct loss to property" is a mixed question of law and fact that will require scientific experts (including epidemiologists) to educate us all on the nature of the "direct loss" caused by the pandemic.  So, discovery is necessary and dismissal at the pleadings stage is not appropriate.

Plaintiffs insist that "physical loss of" property within the context of a business interruption policy, contemplates a situation where, as here, insured businesses are physically deprived of their business property because a physical substance or force impacted the property and rendered the property deficient or lacking in some quality making it unfit for its intended use.

Plaintiffs point out that "property damage" in the Commercial Liability Coverage section is defined as "physical injury to tangible property," including all resulting loss of use of that property.  Thus, Plaintiffs insist if "loss of use" is included within the Policy's liability coverage for "property damage," then "damage to property" (particularly in the context of a business interruption claim) must also be reasonably interpreted to include the same "loss of use".

Plaintiffs are not relying solely on the governmental orders as direct physical loss; to the contrary, they frame the issue as whether the invasion and presence on Plaintiffs' insured property of the virus constitutes direct physical loss.

In Plaintiffs' view, Defendant's interpretation of the "prohibited access to the property" language impermissibly renders Civil Authority coverage entirely or nearly illusory.  So long as the owner (or anyone presumably) can get access to the insured premises for any reason at any point in time, for any duration, the Policy offers no coverage.

Regardless of how the shutdown orders are characterized in terms of their intent, the Amended Complaint alleges that they were issued **in response to** the **physical** presence of SARS-CoV-2 particles.

## II. LAW AND ANALYSIS

-8-

## Standard of Review - Fed.R.Civ.P. 12(b)(6)

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). The United States Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-plead factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679.

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir.2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir.2007)).

The Court should disregard conclusory allegations, including legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555; *J & J Sports Prods. v. Kennedy*, No. 1:10CV2740, 2011 U.S. Dist. LEXIS 154644, *4 (N.D.Ohio Nov. 3, 2011).

A written instrument attached to a pleading is a part of the pleading for all purposes. Fed.R.Civ.P. 10(c).  "In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 335–36 (6th Cir. 2007).

"Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations ... a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable ..."  *Twombly*, 550 U.S. at 556.

**Breach of Contract**

To establish breach of contract in Ohio, "a plaintiff must demonstrate by a preponderance of the evidence that (1) a contract existed, (2) the plaintiff fulfilled his obligations, (3) the defendant failed to fulfill his obligations, and (4) damages resulted from this failure."  *Anzalaco v. Graber,* 970 N.E.2d 1143, 1148 (Ohio Ct.App. 2012).

In the instant case, Defendant does not dispute that an insurance contract exists and that Plaintiffs have fully performed their obligations under the Policy.  However, Defendant contends that Plaintiffs have not demonstrated a breach nor damages suffered as a result of a breach.

**Contract interpretation**

Plaintiffs' Amended Complaint was brought in federal court under diversity jurisdiction, specifically pursuant to the Class Action Fairness Act ("CAFA") (28 U.S.C. § 1332(d)(2)).  Therefore, the substantive law of Ohio applies; and the district court must look for guidance to the decisions of the Ohio Supreme Court.  *Kepley v. Lanz*, 715 F.3d 969, 972

(6th Cir. 2013). If the Ohio Supreme Court has not spoken on an issue, then the district court turns to the decisions of its lower courts, to the extent they are persuasive, to predict how the Ohio Supreme Court would decide the issue. *Id.; Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985).

The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53 (1989). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus.

"In insurance policies, as in other contracts, words and phrases are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the contract." *Williams-Diggins v. Permanent General Assurance Corporation of Ohio*, No. 108846, 2020 WL 4516931, *2 (Ohio Ct. App., 8th Dist. Aug.6, 2020) (citing *Beverage Holdings, LLC v. 5701 Lombardo, LLC*, 159 Ohio St.3d 194, 197 (2019)).

A court should read and consider the contractual provisions as a whole and not in isolation. *Foster Wheeler Enviresponse v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361 (1997). "Courts should not interpret contracts in a way that renders at least one clause superfluous or meaningless." *Transtar Elec. Inc. v. A.E.M. Elec. Servs. Corp.*, 140 Ohio St.3d 193, 2014-Ohio-3095, ¶ 26 (2014).

The absence of definitions does not necessarily make terms ambiguous. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995).

-11-

Ambiguity exists when a term is subject to more than one reasonable interpretation. *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988); *Buckeye Union Ins. Co. v. Price*, 313 N.E.2d 844, 846 (Ohio 1974).  Ambiguous provisions in an insurance policy "will be construed strictly against the insurer and liberally in favor of the insured."  *King*, 519 N.E.2d at 1383.  However, courts cannot create ambiguity if none exists.  *Lager v. Miller-Gonzalez*, 896 N.E.2d 666, 669 (Ohio 2008); *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978).

If an insurance policy is ambiguous, and the policy is construed strictly against the insurer, *Andersen v. Highland House Co.*, 757 N.E.2d 329, 332–33 (Ohio 2001), "it will not suffice for [the insurer] to demonstrate that its interpretation is more reasonable than the policyholder's."  *Id.* at 333 (quotation omitted).  Instead, "in order to defeat coverage,

the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is *the only one* that can fairly be placed on the language in question."  *Id*. at 332.  (Quotation omitted) (emphasis added).

If the policy is ambiguous, and the insured's interpretation is reasonable, the insured prevails.  *Perry v. Allstate Indemn. Co.*, 6th Cir. No. 18-4267, 2020 WL 1284960, *7 (Mar. 18, 2020).

**Coverage is unavailable**

Pursuant to the Zurich Commercial Property Damage Policy, Defendant agrees to pay for **direct physical loss of or damage to** "real property" and "personal property" at [Plaintiffs'] "premises" directly caused by a "covered cause of loss."  Plaintiffs seek coverage

-12-

under the Business Income, Civil Authority and Extra Expense provisions under the Policy. Each of these provisions includes the precondition of "**direct physical loss of or damage to**" the covered property.

Plaintiffs allege in ¶ 13 of their Amended Complaint that: "COVID-19's actual or suspected physical presence at or in the vicinity of Plaintiffs' Property prevent [sic] Plaintiffs from making full use of the Property, especially in cases where the business must close in part or in full." Plaintiffs allege further that the March 2020 ODH Orders prohibited on-site dining, which is the intended purpose of Plaintiffs' restaurant/bar facilities.

Plaintiffs posit that because "loss" and "damage" are used in the disjunctive, they must be interpreted differently. Plaintiffs argue that "loss," in insurance usage and in the ordinary sense, means "deprivation" – "the state of being kept from possessing, enjoying, or using something"– and "deficiency" – "the quality or state of being defective or of lacking some necessary quality or element." Thus, Plaintiffs contend that they suffered a covered loss and are entitled to coverage under the Business Income, Civil Authority and Extra Expense provisions.

Defendant counters that the term "direct physical loss or damage" necessitates tangible damage or permanent alteration of property. And, even accepting Plaintiffs' contention that loss and damage must be separately construed, Plaintiffs have not and cannot allege that they suffered a loss such that they were "physically" deprived of possession, enjoyment or use of their premises by the virus or by the state orders. The ODH Order limited Plaintiffs' use, but did not prohibit Plaintiffs' physical access to provide take-out, delivery or catering services. Moreover, Plaintiffs fail to allege that the coronavirus

-13-

physically altered the appearance or structure  of the Property.

In fact, Plaintiffs' allegations regarding the physical presence and/or impact of the coronavirus are insufficient under the *Twombly-Iqbal* analysis.  The Court must construe the pleading in Plaintiffs' favor and find supporting facts that render Plaintiffs' claim plausible. Unfortunately, Plaintiffs miss the mark when they conclusorily allege in ¶ 13 of their Amended Complaint:  "COVID-19's **actual or suspected** physical presence at or in the vicinity of Plaintiffs' Property," and at ¶ 30:  "Based on the prevalence of the virus in northeast Ohio, it is **probable** that Plaintiffs sustained direct physical loss of or damage due to the presence of coronavirus."  (Emphasis added).

The phrase "direct physical loss of or damage to" is not defined in the Policy. However, the lack of a definition does not make a term or phrase ambiguous.  *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d at 686.

In interpreting the insurance contract, the Court is obliged to give undefined terms their ordinary or common meaning and to follow the guidance in decisions of the Ohio courts. The parties have provided a multitude of supplemental authorities for the Court's consideration which hail from jurisditions throughout the country.  The parties cannot point to, nor has the Court discovered decisions rendered by the Ohio Supreme Court.  The fact that the opinions are restricted only to federal and state trial level tribunals is likely due to the COVID pandemic's relatively brief existence.  In the absence of Ohio Supreme Court authority, the Court may turn to lower court decisions as predictors of how the Ohio Supreme Court would rule on the issue at hand.

Exercising a common sense reading of the Policy, the Court concludes that "direct"

and "physical" are adjectives describing both "loss of" and "damage to" the insured premises.

The <u>Merriam-Webster</u> definition of "direct" includes:  "proceeding from one point to another in time or space without deviation or interruption : STRAIGHT;" "stemming immediately from a source; direct result;" " marked by absence of an intervening agency, instrumentality, or influence;" "characterized by close logical, causal, or consequential relationship."

The <u>Merriam-Webster</u> definition of "physical" is:  "having material existence : perceptible especially through the senses and subject to the laws of nature;" and "of or relating to material things."  Consequently, the meaning of "physical" necessarily excludes that which is intangible or incorporeal.

The Court is persuaded by the discussion of analogous policy terms, "property damage" and "physical injury," in *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23 (Ohio 8th Dist. Ct. App. 2008).  In *Mastellone*, the claim was for "physical injury" to a house as the result of mold.  The court found that dark mold stained the exterior siding of the insured's house; but "the staining did not rise to the level of 'physical injury' to the siding, because it was only temporary and did not affect the structure of the wood."  *Id.* at 41.  The *Mastellone* decision continued:

> The term "physical injury" is undefined by the policy, so we give that term its usual meaning.  *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684.  Read in context with the other terms used in the definition of "property damage," we construe the term "physical injury" to mean a harm to the property that adversely affects the structural integrity of the house.  This interpretation is consistent with authorities on insurance law.  *See, e.g.*, 10A <u>Couch on Insurance</u> (3d Ed.1998), Section 148:46 ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are

intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property"). (*Id*. at 41).

Additionally, the Sixth Circuit cited *Mastellone* with approval in *Universal Image Prods., Inc. v. Federal Ins. Co.*, 475 Fed. App'x 569, 573 (6th Cir. 2012). In *Universal*, the insured leased office space that experienced a "significant odor consistent with microbial contamination." *Id.* at 570. When the odor and contamination grew intolerable, the insured vacated the premises and filed a claim with its insurer for business disruption coverage. The Universal policy—similar to the Zurich Property Coverage Form here—provided threshold coverage for "direct physical loss or damage to" insured property. *Id.* at 572. The Universal policy did not define "direct physical loss or damage" and Michigan's highest court had not yet spoken on the issue. *Id.* Citing *Mastellone*, among other jurisdiction's decisions, the Sixth Circuit determined that Universal did not experience "tangible, physical losses, but economic losses" which were not covered.

Likewise, guided by the analogous policy language analyzed in *Mastellone*, by hornbook insurance law and by ordinary dictionary meanings, the Court finds that Plaintiffs' claim for loss of full use of their premises and for business interruption is precluded under the Zurich Policy. Business Income Loss is covered when the necessary suspension of operations is caused by **direct physical loss of or damage to** property at a listed "premises." Civil Authority Coverage is available when the order of civil authority **prohibits access** to the "premises" and **results from a civil authority's response to direct physical loss of or damage to property** located within one mile from the "premises" . . . which sustains a "business income" loss. Extra Expense Coverage applies to operating expenses incurred that

would not have been necessary to incur if there had been no **direct physical loss or damage to** the property.

Neither the COVID-19 virus nor the state government orders caused "direct physical loss of or damage to" Plaintiffs' Insured Property.

**Loss of Use does not apply**

Plaintiffs make the argument that Zurich's Liability Policy defines "property damage" as "physical injury to tangible property," including all resulting **loss of use** of that property. (Policy, Coverage Form CG 00 01 04 13, at page 14 of 16). (Emphasis added). So, in Plaintiffs' opinion, if "loss of use" is included within the Policy's *liability* coverage for "property damage;" then "damage to property" (particularly in the context of a business interruption claim) must also reasonably be interpreted to include the same "loss of use".

Defendant correctly points out that the Commercial General Liability portion of Plaintiffs' Policy defines an entirely different term—"property damage"—to include loss of use. (Policy at Zurich_BP_0176). But Plaintiffs are not seeking third-party coverage under the Commercial General Liability portion of their policy, rather first-party property-insurance coverage under the Property Protection Portfolio portion. Nowhere does the Property Protection Portfolio portion of the policy—which has its own set of definitions—incorporate the Commercial General Liability definitions. (See Zurich_BP_0049-67, 0120-127, 0128-132). Moreover, the phrase at issue here is "direct physical loss of or damage to property," not simply "property damage;" so, what constitutes "property damage" under another portion of Plaintiffs' Policy is not instructive or determinative on the dispute at issue. (Defendant's Reply Brief, ECF DKT #22).

Even more telling is the language of the Loss of Market or Delay Exclusion  - "We will not pay for loss or damage caused by or resulting from loss of market, **loss of use**, or delay."

Plaintiffs' position on Loss of Use coverage is not tenable.

**Microorganism Exclusion is applicable**

Even assuming Plaintiffs suffered a covered loss, their claim is rightfully precluded by the Microorganism Exclusion.

To reiterate, "**Microorganism**" means any type or form of organism of microscopic or ultramicroscopic size including, but not limited to, "fungus", wet or dry rot, **virus**, algae, or bacteria, or any by-product.

The Exclusion provides that Defendant **"will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of "microorganisms,"** unless resulting from fire or lightning.  Such loss or damage **is excluded regardless of any other cause or event**, including a "mistake," "malfunction" or weather condition, that **contributes concurrently or in any sequence to the loss**, even if such other cause or event would otherwise be covered.

We will also not pay for loss, cost, or expense arising out of any request, demand, **order**, or statutory or regulatory requirement **that requires any insured** or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or **in any way respond to, or assess the effects of "microorganisms."**  (Emphasis added).

Applying this Policy provision to the facts here, COVID-19 is a virus; and therefore, a microorganism.  Loss or damage directly or indirectly caused by COVID-19 is not covered.

-18-

Plaintiffs have not sufficiently nor plausibly alleged that the virus was present in or on their premises.  The Order prohibiting indoor dining allegedly caused Plaintiffs to suffer loss of the intended use of the Insured premises as dine-in restaurants/bars.  However, Plaintiffs acknowledge that the ODH Order was in response to the spread of COVID-19 in enclosed spaces where persons gather in close proximity, and where the virus could linger on hard surfaces.  Thus, the virus prompted the Order and at a minimum, indirectly caused Plaintiffs' claimed loss, necessitating denial under the Exclusion.

The Court does not accept Plaintiffs' distinction between virus and pandemic.  Yet, even if the government orders were said to be in response to a pandemic and not a virus, the orders concurrently or sequentially caused the alleged loss or damage.  The Exclusion still presents a bar to coverage.

Furthermore, the final clause of the Microorganism Exclusion defeats Plaintiffs' claim also.  The March 2020 Orders required Plaintiff Insureds to respond to the effects of the microorganisms by immediately ceasing onsite consumption of food and beverages and restricting their operations to take-out, delivery and catering services.  The Policy excludes coverage for such loss, cost or expense incurred.

**Bad Faith**

In their claim for Breach of Covenant of Good Faith and Fair Dealing, Plaintiffs allege in part that:  "Defendant refused and continues to refuse to give any reasonable interpretation to the provisions in the Policies or any reasonable application of such provisions to Plaintiffs' and Sub-Class Members' claims."  And " Defendant failed to provide Plaintiffs and Sub-Class Members any reasonable or justifiable basis for denying Plaintiffs and Sub-Class Members'

-19-

claims."

If denial of coverage is appropriate there is no bad faith." *Cleveland Freightliner, Inc. v. Federated Serv. Ins. Co.*, Case No. 1:09CV1108, 2010 WL 395626, at *13 (N.D. Ohio Jan. 26, 2010).  Regardless, "the test . . . is not whether the defendant's conclusion to deny benefits was correct, but whether the decision to deny benefits was arbitrary or capricious." *Thomas v. Allstate Ins. Co.*,  974 F.2d 706, 711 (6th Cir. 1992).  There is no bad faith as a matter of law if a "reasonable justification" existed for the denial.  *See Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994); *Thomas*, 974 F.2d at 711.

Considering the 144 COVID-19 property insurance cases that Defendant points out have been dismissed around the country (ECF DKT #32), and the "growing consensus of courts" that have rejected COVID-19 business interruption claims which was noted by another Northern District of Ohio jurist, it cannot fairly be held that Defendant lacked a reasonable justification for denying coverage.

Count III of Plaintiffs' Amended Complaint is without merit.

### III. CONCLUSION

Although the Court is sympathetic to the plight of the food and beverage industry in the midst of the COVID-19 pandemic, the Court is not permitted to interpret the parties' contractual language to bring about a more equitable result.  Nor is the Court authorized to find ambiguity where none exists.

A plain reading of the Zurich Property Coverage Policy mandates the conclusion that there is no coverage for Plaintiffs' claimed business losses or damages because there was no direct physical loss of or damage to their Property; and that, in any event, coverage for

-20-

Plaintiffs' losses or damages is excluded by operation of the Microorganism Exclusion.   The Court denies Plaintiffs' prayer for Declaratory Relief and denies Plaintiff's Breach of Contract claim because there was no breach.  The Court also denies the Bad Faith claim as there is no coverage under the Policy.

The Motion (ECF DKT #14) of Defendant Zurich American Insurance Company to Dismiss the Amended Complaint of Plaintiffs Brunswick Panini's, LLC and Kent Entertainment Group, LLC pursuant to Fed.R.Civ.P. 12(b)(6) is granted.

In addition and in light of this decision, the Court has elected to exercise jurisdiction over Plaintiffs' claim for Declaratory Relief and declines Plaintiffs' invitation to await Ohio Supreme Court certification of a question from Cincinnati Insurance Company in a case pending in the Southern District of Ohio.  Therefore, Plaintiffs' Motion to Remand (ECF DKT #12) and Plaintiffs' Motion to Stay Proceedings (ECF DKT #20) are denied.

**IT IS SO ORDERED.**

**DATE: February 19, 2021**

 **s/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**